The case is Oksana Feshovets v. Atty Gen The appeal results from the denial by the Board of Immigration Appeals of my client's appeal of the immigration judge's denial of their application. Essentially what the Board has found is that the past harm that my client has suffered was not on account of a political opinion, but rather on account of personal retribution. And we have a very big problem with this denial because the denial doesn't cite to any case law defining what personal retribution is and how it is different from persecution on account of a political opinion. The second ground for denial that was stated in the immigration judge's decision was lack of cooperation, but the Board of Immigration Appeals did not go into that area. They stated that because they find that the harm suffered was not on account of a political opinion, they denied the case. What is your best evidence in the record that political opinion was a central motivation for the persecution? Essentially the facts speak for themselves. The persecution here results from my client's actions as a doctor at a psychiatric hospital where she acted to protect her patient from abuse imposed by her powerful husband, who was first a powerful business person in the area and then later on became a political figure. She did not have any personal relationship with the abuser. The abusive husband became the political figure. Exactly. Was he still holding that office when she was determined to be removable? Yes, he was in power between 2008 and 2010. When did he no longer have the position that you alleged gave him the ability to make her life unhappy? Absolutely. Even though he was no longer in the position of the governor of her region, he still held a very significant power as he held before because of his wealth. The facts of this case show that my client had no personal relationship with this person. She didn't act out of anything other than her political beliefs and her duty as a doctor to protect her patient. She suffered very severe harm. Are you saying that a doctor's duty in discharging the Hippocratic Oath to protect a patient is a political opinion? Well, in some countries it is, because in her particular situation she faced persecution not only from the person himself but also from the police. When she brought the actions of the abuser to the attention of the police, the police assaulted her. The police threatened her. The police told her to stop complaining about this person. So the government was complicit in this and very much involved. So we cannot say that this person just by himself targeted my client. She was targeted by the entire system of the government that she believes was set in motion by this powerful person. And the immigration judge found her credible. Do you have a similar case in which a doctor has taken a medical position and as a result has been targeted for persecution? I cannot think of precisely the same case. It doesn't have to be precise, anything even in the ballpark. Well, I would say that a recent example where Osama Bin Laden was located by the government with the help of some doctors, that could probably be similar to the situation when they were discharging their duties but then they were targeted. How were they discharging their medical duty? I'm sorry, how did that discharge their duty as doctors to their patient Osama Bin Laden? They were not treating him, they were administering the polio vaccine when they helped the U.S. government locate this person. But they were targeted by the terrorists there and they had to seek asylum in the United States and asylum was granted. So in this case here, coming back to my client, she acted not only in refusing to admit this patient to the psychiatric ward because she didn't present any medical issues, she also helped her locate an attorney. She also recorded her testimony and preserved the tapes. So she acted as an activist and actually the record contains testimony that she acted as an activist on other occasions before this happened. Does Russia have a statute that requires doctors to report instances of abuse? This is Ukraine, Your Honor. Does Ukraine have a statute? Thank you. I appreciate the correction. Your Honor, I'm not familiar with Ukrainian law that well but I don't think she acted based on any law. She acted based on her duty to not admit to psychiatric ward and the conditions in psychiatric wards in Ukraine are horrible. Just because this person has been labeled by her abusive husband to be a psychiatric patient and because her husband influenced the authorities to admit my client's patient to the hospital. Ms. Arstova, even if we agree with you that it would have been rational for the immigration judge to conclude that your client was mistreated because of her political opinion, isn't it equally plausible or rational for the immigration judge to have concluded as was done here that it was a personal vendetta rather than political persecution? Your Honor, I believe it was completely reasonable to conclude that for the immigration judge. First of all because as I said there was absolutely no personal relationship between my client and the person in this case. Your client is in the middle of his marital dispute, right? I mean that's pretty personal, isn't it? No, Your Honor, because she did not interfere into the marital dispute per se. She was at her job discharging her duties as a doctor and then this patient is being delivered to her with the claim that the hospital should accept her and treat her for a non-existent psychiatric disorder. So that goes well beyond her. That's absolutely different from her coming to the marital home and interfering. She didn't do that. She didn't have to come to the home. I mean the husband appears to be intent on shedding himself of this wife. Right. And she is interfering with his ability to do just that. So why is that not a central motivation for the actions that he then took against her? Well, once again, in probably any and every political opinion case, there will be a certain degree of personal animosity between the actor and the victim. Anyone who opposes a president of the country may experience that president's unhappy feelings. So it's very dangerous for the immigration judges to deny political opinion cases just because there is a certain degree of personal animosity involved. Of course, a degree of animosity would be involved, but this is not the case where the relationships between the parties are personal. This is a case where the relationship between the parties went well outside of the marital home. The persecutor here tried to influence the government, including the government psychiatric hospital lead police, to help him get rid of his unwanted spouse or continue to abuse her, whatever the goal may be. May I ask a question about the evidence in the record? Do you have a place you can point us to that would help us understand whether your client reported the effort to commit the wife of the powerful man, Mr. Commit, to the psychiatric hospital, or whether it was your client who reported that to the police and thereby triggered the actions of the police against her, or whether it was Mr. Commit who reported to the police that he wanted action taken against Peshevitz because she had engaged in this conduct, and this conduct being to refuse to admit to the psychiatric facility the abused spouse. No, Your Honor. She testified that in 2003, after the wife was surrogated again, she reported all the events to the police, and the police verbally and sexually assaulted her and told her to drop her claims. Did Commit ask them to do that? Do you have evidence in the record that he was the reason? Documentary evidence? No, any kind of evidence. Any kind of evidence that it was his request to the police that triggered the official actions of persecution against her? Well, that was her testimony, and the judge found her to be credible. That it was Commit's report that did it? That's what she testified to, and the government did not dispute that, and the judge did not dispute that. The judge accepted the entire testimony in this case as credible, and the Board of Immigration Appeals did not find any problems with this determination. So I believe that based on the positive credibility finding, the judge should have made an inference that this was persecution based on political opinion, precisely because the judge did not have any problems with credibility and accepted all the testimony to that effect as credible. If the judge were to doubt her testimony in that respect, the judge should have spelled out her reasons for declining my client's testimony and for lack of credibility, and that wasn't done in this case. So we believe, Your Honor, that my client testified credibly, consistently, and based on the evidence in the record, it was absolutely unreasonable for the court to claim that this was a purely personal matter where the government was dispensed with. Would it have to claim purely, or just that the central reason? No, they said the central reason was, and I apologize for that, but the central reason was personal retribution, and I believe that, once again, it's often inseparable from persecution on political opinion, and the fact that personal animosity was present should not be determinative here. What the court should look at is the involvement of the government in the persecution, and if the government was involved, then it goes well beyond the personal animosity and the government's acquiescence in the persecution that matters here. So we request that the decision of the Board of Immigration Appeals be reversed. Okay. Thank you, Ms. Aristotle. We'll hear you on rebuttal. Thank you. Ms. Geraldine? Yes. Good morning, Your Honors. May it please the Court, Rhea Jarawan, for the respondent, the U.S. Attorney General. In this matter, the Board did not err in denying Ms. Fascivitz's applications for asylum and withholding of removal because no nexus existed. She did not meet her burden to show a nexus between the harm that she suffered and a protected ground. The substantial evidence shows, as Your Honors have pointed out, that she was targeted by Mr. Committ for personal reasons. This was a personal vendetta against her for interfering in his marital spousal abuse, and she was targeted for that reason. The substantial evidence points to that. It is Ms. Fascivitz's burden to prove that political opinion or another protected ground was the nexus or the motivation behind his denigration. It's technically the only motivation. Correct. A central reason for the persecution, and central reason under this case law has to be an essential or principal reason. It's of primary importance, and as the Board determined, it must be primarily the personal vendetta is primarily relevant to this situation. The evidence that shows this, the substantial evidence, includes the fact that but for Ms. Fascivitz's involvement in this situation, in this personal marital situation, Mr. Committ would not have targeted her. And that's shown by the fact that every time that she encountered Svetlana, his wife, and tried to help her, immediately thereafter she was targeted in some way. Does it make a difference that the relationship that she had with the wife, that is, it wasn't that she was a personal friend, but she met her in a different capacity. She was really an outside actor and was trying to protect her from what was abusive conduct on the part of the husband. Does that factor into our analysis here? It factors in the sense that she wasn't an activist portraying a political opinion. She was simply a doctor who, in her encounters with a patient, tried to help that patient. And as a result, the patient's husband would then retaliate against her. So it was essentially a set of circumstances that she was not seeking, but that she, due to her employment, was involved in, and then went further to try and help this patient. But the fact that she's a doctor doesn't necessarily make this case dispositive. It's the fact that she's a private citizen, Svetlana's a private citizen, and Mr. Committ is a husband who's angry and, as Your Honor stated, is trying to rid himself of his wife and is committing spousal abuse. But it is true, is it not, that Committ got the machinery of the State involved in persecuting Ms. Fesserovitz, the involvement of the police specifically. Would you address that? I actually take issue with the factual interpretation that Ms. Tatyana has provided. What did the I.J. find? The I.J. did not find that the police were ordered by Mr. Committ to do anything. In fact, there's no evidence in the record to show a connection between Mr. Committ and the police at all. Was it triggered by her going to the police and saying you have to do something or filing a complaint because there was an inability of a doctor to access her patient, to visit her patient? Mrs. Fesserovitz did file a complaint when she realized that the lawyer that she had tried to get for Ms. It was a lawyer, not a doctor. Right, a lawyer. She tried to obtain a lawyer for Svetlana. And she filed a complaint with the police and they basically told her to drop the case and withdraw the complaint. But there's no evidence that they did that on account of a political opinion. Certainly they told her he has some power, but at that point he wasn't actually governor. In fact, a lot of these incidents occurred well before he became governor. So just because he became governor eventually does not transport this case into a political opinion case. Is it your argument that there wasn't sufficient evidence to conclude that she was persecuted on account of political opinion? Or is it your argument that there may have been sufficient evidence for that, but this was a judgment call and because of the deferential standard of review we have to affirm? My argument is that the immigration judge and the board found that Ms. Fesserovitz did not meet her burden, did not present the evidence necessary to meet the nexus burden, to show that there was harm on account of that political opinion. The I.J. said essentially that the substantial evidence points directly to a personal retribution. There was no other evidence in the record for the I.J. to analyze as anything other than a personal retribution. So if he had been governor, that would have changed the outcome here? Not in this particular circumstance because Ms. Fesserovitz must show that as a persecutor, he is motivated to act based on her beliefs. There is no evidence in the record to show that he cared at all about her prior activism in college or as a hospital administrator. There's no evidence to show that he cared anything other than her interactions with Svetlana. In fact, there were years in between their interactions. So she was not harmed every month or every day or every year. She was only targeted when she encountered Svetlana. So the fact that he became governor certainly gave him a little bit more power and it gave him more reason to hide this marital abuse. But it did not change the fact that he was targeting Ms. Fesserovitz because now it was a larger public stage and she was going to hurt his reputation. But again, that's not enough to show under the law that there's a nexus to a political opinion. If there had been five or ten other women that were involved in health care that he had gone against, would that have been a special group that was targeted if they were all women? Certainly the board did not address the cognizability of the particular social group that Ms. Fesserovitz asserted. If there was evidence that there was an immutable group that had social distinction, all the facets of a particular social group as required under the law, then perhaps the board and the IJ could have assessed that in the first instance. But we do not have that here. We have a private citizen who is involved in a personal matter and was retaliated against for getting herself involved in that matter. And in fact, her son's statement, even her son's testimony, makes clear that when the police spoke to him, they said, quote, kids, you let your mother know, this is page 368 of the record, kids, you let your mother know that it is very dangerous to be too nosy about other people's business. Let her stay quietly and stop looking for trouble. This was clearly designed to target Ms. Fesserovitz because of her involvement. So in regards to the board's decision, the record does not compel reversal of the nexus finding by the board and the immigration judge. In regards to the board's other finding regarding the Convention Against Torture, the evidence does not show that it is more likely than not that now, 12 years later, having left Ukraine in 2004, that she would more likely than not be tortured by Mr. Kmit. He no longer holds that position of power. He no longer, therefore, is complicit in any governmental consent or acquiescence to any future torture. The evidence shows that Mrs. Fesserovitz could relocate to another part of Ukraine, or she failed to show that she could not relocate, excuse me. In fact, she returned to Ukraine in 2004 for several months back to her hometown and was not harmed based on the record. She also presented no evidence in the country conditions report that there was a vast extent of his power and influence throughout the country. In that conditions report, what is the relevance of it, if any, to the prior finding that you discussed, the absence of a nexus? The country conditions report, I believe, based on the analysis by the IJ and the board, really focused more on the lack of future persecution, at least according to the IJ. The board didn't address that. On the Convention Against Torture issue? Well, the country conditions report really focused more on the Convention Against Torture analysis, but it really provided no evidence at all. I mean, Mr. Committ was not even mentioned in that report. So the evidence, her burden was not met in regards to the Convention Against Torture. Certainly the IJ did recognize that sexual assault is a form of torture, but past torture is only one part of the regulation for the Convention Against Torture. The other parts of that regulation, the immigration judge felt, were not met, and therefore she did not meet the more likely than not standard, the greater than 50% standard required for proving that she would likely be tortured. In regards to the past persecution finding, the board also did not air in that regard. The three incidents involved in the hospital in which she, Ms. Feshovitz, defended certain individuals, one individual who was apparently fired for maternity leave purposes, that did not rise to the level of past persecution. She was still able to find another job. She was not severely harmed by that incident, nor was she severely harmed by the incident in college in which she was supporting gypsy women who were accused of theft. And all Ms. Feshovitz could point to is that she received some bad grades. She still was able to graduate college and was still able to obtain a job after that. So ultimately, Your Honors, the record just simply does not compel reversal of the agency's decision here. Even given the credibility finding by the immigration judge? Certainly. She was credible. There is no evidence to say that she was not credible according to the board and the IJ. But credibility is not the only issue in these cases, and the board's laser focus on the nexus issue is the dispositive issue here. If you have no further questions? I have a question about your brief. Are you familiar with the Molina-Morales decision from the 9th Circuit? It was a two-to-one decision. There was a dissent from Judge Fletcher. I'm not familiar with that. Okay. Well, it wasn't cited in your brief. We've looked at that case from time to time on unpublished opinions. I didn't see any comment in your brief about that. It supports your position. Oh, and this is a 9th Circuit case. Not the dissent. Not the dissent. I will look into that case, Your Honor. I was not aware of that case. If there are no other questions, I will rest on the argument submitted and ask that the petition be denied. Thank you, Ms. Girono. Rebuttal, Ms. Arstova. Yes, Your Honor. First of all, I would like to point out that it is incorrect that my client was only targeted after she interfered into the life of Svetlana. What happened in 2008 happened long after my client left for the United States in 2004. After Clint became the governor, he targeted my client's daughter. She was beaten. She actually had to leave the country and request asylum in Poland after that because he wanted to recover the tapes that my client had in her possession, and that had nothing to do with the personal vendetta. But the tapes were of the wife, right? The tapes contained the confessions of the wife testifying to the espousal abuse that she suffered from. Why wouldn't that reinforce the argument that this is primarily a personal resentment or at least centrally motivated by a personal resentment at your client for interfering with the attempt by Mr. Kmit to hit his wife? She did not interfere in 2008. What happened in 2008, he became the governor, and he wanted to advance his political career, perhaps looking at higher positions, and he wanted to recover the tapes. And in doing so, he targeted my client's daughter. And we believe that he still has these ambitions. He still will want the tapes. The Ukraine is still in political turmoil. The government is shifting, so there will be elections. There will be chances for this person to advance his political career. And I believe the country report shows that the country is not stable politically. So we believe that there is a continued danger to my client. And on other points brought by the prison counsel, her return to Ukraine,  well before he became governor in 2008. So that return is not really relevant to the issue here, which essentially started in 2008 after he became governor. And she applied for asylum after that, and she didn't apply before that. And finally, the internal relocation option, because the police was involved, there is actually a statute that I'm citing to you in my brief, which says that if the government is involved, then the internal relocation should be presumed to be unreasonable and it's burden of the government to prove that it is reasonable. And the government did not sustain its burden in this case. So once again, we believe that this case goes well beyond personal retribution because it involves a one-time government official who is aspiring to continue in his career again and may target my client again because of the tapes that she has, or he believes she has in her possession. Thank you. The court thanks the counsel for an excellent argument. We'll take the matter under advice.